C. F. LYTLE CO., a Texas corporation,
Plaintiff-Appellant,

v.

Harold CLARK, the Building Inspector
of Pitkin County, Colorado, et al.,
Defendants-Appellees.

No. 73–1625.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 9, 1974.

Decided Feb. 12, 1974.

Jordan Hochstadt, Denver, Colo. (Jerome R. Strickland, Denver, Colo., on the brief), for plaintiff-appellant.

J. Nicholas McGrath, Jr., Aspen, Colo., for defendants-appellees.

Before HILL, BARRETT and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from denial of a mandatory injunction sought to compel the issuance of a building permit to allow completion of construction on a condominium project.

Appellant C. F. Lytle Co. is a Texas corporation with its principal place of business in that state. Appellees are the Building Inspector, the Board of Adjustment and its individual members, and the Board of County Commissioners, of Pitkin County, Colorado. On June 18, 1965, appellant purchased 7.01 acres of land near Aspen, in Pitkin County, for the purpose of building a condominium resort lodge. At the time of the convey-

ance a lodge was a permitted use of the land, which was zoned "Agricultural & Forestry" (AF). In order to get a building permit, and to comply with zoning regulations then in effect, appellant obtained a height variance from the Board of Adjustment on August 3, 1965, and a building permit for the construction of 123 resort lodge condominium units the following day.

On July 22, 1965, prior to the granting of appellant's height variance, the Pitkin County Planning & Zoning Commission recommended changing various definition sections of the county zoning regulations. One such recommendation deleted the use "lodges" from permitted uses in areas zoned AF. On August 18, 1965, two weeks after appellant's building permit was issued, the changes were adopted and appellant's intended use became non-conforming.

Nevertheless, appellant commenced construction and recorded a Condominium Map and a Condominium Declaration. In accordance with the declaration the entire tract of land was set aside for the condominium resort lodge. By March, 1966, appellant had substantially completed a resort lodge, a lobby and management area, and twenty-four of the condominium units. Financial difficulties arose, however, and disputes between appellant and its co-venturer resulted in the dissolution and winding up of the coventure. Appellant ceased construction and had no contact with appellees until November, 1971.

At that time appellant filed an application for a building permit, the application stating in part that appellant wished to finish work under its original permit. The application was denied by the Building Inspector because the original building permit had expired and was no longer valid and because the use "resort lodge" was nonconforming. Appellant appealed the decision to the Board of Adjustment, and requested the Board to advise the Building Inspector to reissue or replace the original building permit. A hearing was held and the decision was affirmed.

Appellant then filed suit in the Pitkin County District Court seeking relief from the Board's order. However, the suit was dismissed without prejudice at appellant's request and another application for a building permit was filed. Aspen Park Owners Association Limited, an association of the twenty-four owners of the completed condominium units, filed a separate application. Both applications were denied, and were affirmed by the Board of Adjustment. The Association then filed suit in Pitkin County District Court, seeking a review of the Board's action.

Appellant commenced suit in federal district court in Colorado, seeking a declaratory judgment and for $500,000 damages and/or an injunction. The case was submitted to the trial court upon briefs and an agreed statement of facts. Finding that appellant had abandoned the project and that its building permit had expired, the trial court rendered judgment for the appelleees.

The first argument is that the trial court erred in holding appellant's building permit expired pursuant to § 302(d) of the Uniform Building Code, in effect in Pitkin County. Appellant contends § 302(d) is inapplicable because it deals only with procedures for and the cost of obtaining a new building permit after a cessation of work. Section 302(d) provides:

(d) Expiration. Every permit issued by the Building Official under the provisions of this Code expire by limitation and become null and void, if the building or work authorized by such permit is not commenced within 60 days from the date of such permit, or if the building or work authorized by such permit is suspended or abandoned at any time after the work is commenced for a period of 120 days. Before such work can be recommenced a new permit shall be first obtained so to do, and the fee therefor shall be one-half the amount required for a new permit for such work, provided no changes have been made or will be made in the original plans and specifi-

cations for such work; and provided, further, that such suspension or abandonment has not exceeded one year.

Appellant concedes that work on the project stopped for over 120 days, and that the original building permit expired. However, appellant contends the provision should be interpreted to mean that between the time work has ceased for 120 days, and for one year thereafter, a builder may apply for a new permit and pay only one-half the fee required; after work has ceased for one year, a builder must apply for a new permit and pay the full fee. Urging the doctrine of relation back, appellant would construe the provision to revalidate the original permit at any time in the future merely by paying the appropriate fee. Under such a theory zoning regulations in effect at the time the original permit was issued would be controlling, and not present zoning regulations.

 Construing § 302(d) to accomplish its plain purpose, we find appellant's argument to be without merit. Clearly the provision does not contemplate reviving an old permit and its attendant zoning laws after the passage of an unknown number of years. The section cannot be extended to privileges not embraced in it. 101 C.J.S. Zoning § 241 (1958). The provision, captioned "Expiration", specifically states a building permit shall expire by limitation and become null and void after a given set of events. Such language leaves no doubt that a builder who thereafter applies for a new permit is subject to zoning regulations currently in effect. The trial court was correct in its interpretation of § 302(d) and its subsequent conclusion that appellant's building permit expired thereunder.

Appellant next contends the trial court erred in holding the project had been abandoned within the meaning of § 10.3 of the Pitkin County Zoning Resolution. That section provides:·

10.3 ABANDONMENT

Whenever a non-conforming use has been discontinued for a period of one year, such use shall not thereafter be re-established, and any further use shall be in conformance with the provisions of this resolution or any amendment thereof.

██ Discontinuance of a non-conforming use, appellant argues, requires intent and a voluntary act, and neither of these elements were established. Based on the fact appellant had ceased construction and all communications with appellees from March, 1966, to November, 1971, the trial court found these elements to exist. However it was not necessary to do so to conclude appellant abandoned the project. Intent is an element with regard to a use-terminating provision that fails to specify a time period. Under some provisions, however, non-use for a stated period of time is conclusively deemed to be an abandonment of the non-conforming use. *See* 101 C.J.S. Zoning § 199 (1958), citing Beszedes v. Board of Comm'r, 116 Colo. 123, 178 P.2d 950 (Colo.1947). In *Beszedes* the provision, in pertinent part, provided that "if such non-conforming use is discontinued for a period of one year . . . any further use of said premises shall be in conformity with the provisions of this resolution." Section 10.3 of the Pitkin County Zoning Resolution is phrased in virtually the same language. We believe no intent to abandon need be shown thereunder.[1]

Appellant's next argument is that enforcement of the amended zoning ordinance, adopted subsequent to the commencement of construction, and appellees' refusal to issue a building permit based thereon, amounts to an illegal taking of property.

1. Appellant cites Service Oil Co. v. Rhodus, 500 P.2d 807 (Colo.1972), where the Colorado supreme court said an intent to abandon a non-conforming use was required. The case is inapplicable, however, because the provision there concerned restoration of a non-conforming use which had been damaged by "fire and other causes.

■ Appellant recorded condominium declarations, setting aside the real estate for condominium purposes.[2] This precludes the undeveloped land from being used for anything else, notwithstanding other allowable uses under the AF zoning now in effect. When the zoning ordinance, which now prohibits condominiums, is considered, the result is that appellant can do nothing with the land.

■ The due process and just compensation clauses of the state and federal constitutions do not require that zoning ordinances permit a landowner to make the most profitable use of his property. For there to be a taking the landowner must show he has been deprived of all reasonable uses of his land. Although appellant cannot develop the remainder of its land, we do not believe there has been an illegal taking. A landowner cannot create his own hardship and then require that zoning regulations be changed to meet that hardship. Madis v. Higginson, 164 Colo. 320, 434 P.2d 705 (1967). It was unnecessary for appellant to record condominium declarations on all units and all the land, before he had completed any of the construction. Because appellant's own voluntary acts caused the hardship, we find the "taking" argument to be without merit.

Finally, appellant argues appellees are estopped from refusing to issue a building permit for the completion of construction, and contends the issuance of the permit was a representation that the development was a permitted use under the then-existing zoning regulations and that it has changed its position materially in reliance thereon. ·

■■ Although the defense of equitable estoppel may be applied against government agencies to prevent injustice, Crawford v. McLaughlin, 172 Colo. 366, 473 P.2d 725 (1970), we do not believe

the facts in this case merit the doctrine's application. At the time the building permit was issued, appellant's proposed condominium development was a proper use of the land. Appellant was authorized to, and did in fact, commence construction under the permit, completing only a portion of the total project. However, his subsequent 5½ year delay in construction, coupled with the expiration of the permit and failure to communicate with appellees, negates application of the equitable estoppel doctrine.

■ Had appellant continued construction it would have been permitted to complete the project, regardless of · the change in the zoning laws. But equitable estoppel does not arise when the actions complained of are a result of the complainants own actions and not the product of the defendants' acts. 31 C.J. S. Estoppel § 75 (1964).

The judgment is affirmed.

2. The Condominium Ownership Declaration provides in part: "That this Declaration shall not be revoked or any of the provisions herein amended unless 80% of all of the votes of the owners of the General Common Elements,

and 100% of all of the mortgagees or beneficiaries of all of the mortgagees or deeds of trust on the condominium units are cast in favor of and agree to such revocation. . . "