John SUNDHEIM and Joann Scoggin Sundheim, Plaintiffs–Appellants and Cross–Appellees,

v.

BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, and Suzy McDanal, R.A. "Chris" Christensen and James Sullivan, individually and in their capacities as members of the Board of County Commissioners of Douglas County, Colorado, and Ed Tepe, individually and in his capacity as the Director of Planning and Community Development in Douglas County, Colorado, Defendants–Appellees and Cross–Appellants,

and

Dorothy Rudd and Robert Rudd, Defendants–Appellees.

Nos. 93CA1324, 93CA1891.

Colorado Court of Appeals, Div. V.

March 9, 1995.

Rehearing Denied April 20, 1995.

Certiorari Granted Nov. 14, 1995.

Massey Showalter & Marsh, P.C., Richard A. Marsh, Denver, for plaintiffs-appellants and cross-appellees.

Greengard Senter Goldfarb & Rice, Steven J. Dawes, Kenneth R. Motsenbocker, Denver, for defendants-appellees and cross-appellants.

Unkeless & Bisset, Jennifer Bisset, Denver, for defendants-appellees Dorothy Rudd and Robert Rudd.

Opinion by Judge DAVIDSON.

Plaintiffs, John Sundheim and JoAnn Scoggin Sundheim, appeal from the dismissal pursuant to C.R.C.P. 12(b)(5) of their federal civil rights claims brought under 42 U.S.C. § 1983 (1988) and 42 U.S.C. § 1985 (1988), and from the summary judgment entered in favor of defendants, the Board of County Commissioners of Douglas County, and Suzy McDanal, R.A. "Chris" Christensen, and James Sullivan, individually and in their capacities as members of the Board of County Commissioners of Douglas County, Ed Tepe, individually and in his capacity as the Di-

rector of Planning and Community Development in Douglas County, (collectively Douglas County) and Dorothy and Robert Rudd (Rudds), on plaintiffs' claim for invasion of privacy. Douglas County cross-appeals from the denial of its request for an award of attorney fees. We affirm in part, reverse in part, and remand with instructions.

The following facts are set forth in the complaint or are not disputed. Plaintiffs own property in Douglas County which, according to county zoning regulation, may be used for the commercial boarding and training of horses only by special review. The Rudds own property adjacent to plaintiffs' and, as relevant here, opposed the operation of a commercial horse boarding and training business in the area.

In 1990, Douglas County denied plaintiffs' application for a use by special review to board and train hunter/jumper horses commercially. Plaintiffs did not seek judicial review of this denial.

Following reports that a commercial horse boarding and training business was operating on plaintiffs' property, Douglas County hired an investigator who then contacted Jay-Brooke Training (JayBrooke) through its advertisement in the yellow pages of the telephone directory which listed the Sundheim property as its business address. He spoke with Jennifer Brooke, one of the owners, about boarding some horses and upon her invitation, he made an appointment to visit the operation.

The investigator visited the property, but not on the appointed day. Since Jennifer Brooke was not present, the other owner gave the investigator a tour of the facility, described the services offered, and gave him a copy of the boarding and training contract.

After the investigator relayed this information to Douglas County, it contacted plaintiffs and JayBrooke to inform them that they were in violation of the zoning regulations. JayBrooke moved its business to another location shortly thereafter.

Plaintiffs then filed suit against Douglas County alleging violations of their due process and equal protection rights under the United States and Colorado Constitutions, and against Douglas County and the Rudds alleging conspiracy to deprive them of their civil rights and violation of privacy.

The trial court dismissed the federal and state constitutional claims under C.R.C.P. 12(b)(5) as time barred because they had not been filed within the 30–day time limit for judicial review under C.R.C.P. 106. The trial court also dismissed plaintiffs' conspiracy claim on the basis that they had not alleged a race-based conspiracy.

Douglas County then moved for suspension of discovery based upon its contention that sovereign immunity barred plaintiffs' remaining claim for invasion of privacy. At the same time, Douglas County moved for summary judgment based upon sovereign immunity or, alternatively, on the basis that, according to the undisputed facts, no invasion of privacy had occurred. The Rudds also filed a motion for summary judgment. The trial court granted the motion to suspend discovery as to Douglas County.

Plaintiffs moved for suspension of response to the motion for summary judgment and to conduct discovery on the grounds that they could not defend against the summary judgment motions without conducting discovery. The trial court denied that motion.

Plaintiffs filed no response to the motions for summary judgment and the trial court subsequently granted those motions.

## I.

### Federal and State Constitutional Claims

Plaintiffs argue that the trial court erred in its determination that their first two claims for relief, brought against the county defendants, were time-barred because they were not brought in a C.R.C.P. 106 action within 30 days of the Douglas County denial of the special use application. We agree in part.

### A.

### Section 1983 Claims

Because they brought their federal constitutional claims under 42 U.S.C. § 1983, plaintiffs contend that the trial court erred in

applying the 30–day limitation for filing an action for judicial review pursuant to C.R.C.P. 106. We agree.

■ An action for judicial review under C.R.C.P. 106(a)(4) is the exclusive remedy for contesting a zoning decision when the entire zoning ordinance is not challenged and when record review of the county procedure provides an adequate remedy. *See Snyder v. City of Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975). When only declaratory relief is requested, claims brought under 42 U.S.C. § 1983 effectively merge into the C.R.C.P. 106 claim. *Higby v. Board of County Commissioners*, 689 P.2d 635 (Colo.App.1984).

■ If, however, monetary damages are sought, because C.R.C.P. 106 does not provide for a remedy in damages, a separate 42 U.S.C. § 1983 action based upon alleged violations of federal constitutional rights may be maintained. *Sclavenitis v. Cherry Hills Village Board of Adjustment & Appeals*, 751 P.2d 661 (Colo.App.1988). Such separate action under 42 U.S.C. § 1983 may be brought regardless of the status of any C.R.C.P. 106(a)(4) action. *See Luck v. Board of County Commissioners*, 789 P.2d 475 (Colo.App. 1990); *see also Wilson v. Town of Avon*, 749 P.2d 990 (Colo.App.1987).

■ Here, plaintiffs do not seek declaratory or injunctive relief but only monetary damages. The trial court therefore erred by determining that the failure to bring a timely C.R.C.P. 106(a)(4) action incorporating the federal constitutional claims barred the 42 U.S.C. § 1983 claim. *Cf. Marino v. Willoughby*, 618 P.2d 728 (Colo.App.1980) (although the principle of *res judicata* bars not only claims previously decided but also all claims which could have been brought in the previous litigation, civil rights claims are not barred if the administrative tribunal which heard the case lacked the authority to consider such claims or to award damages).

## B.

■ However, this does not end our inquiry. Appellate courts, if it is possible, should uphold a correct result, even if the reasoning was incorrect. *See Skinner v. Industrial Commission*, 152 Colo. 97, 381 P.2d 253

(1963); *Dorris v. Gardner Zemke Co.*, 765 P.2d 602 (Colo.App.1988).

Applying the appropriate standard of review for a motion to dismiss under C.R.C.P. 12(b)(5), we will assume that the material allegations of the complaint are true. *See Halverson v. Pikes Peak Family Counseling & Mental Health Center, Inc.*, 795 P.2d 1352 (Colo.App.1990). With that assumption in mind, we conclude that, although the trial court properly dismissed some of plaintiffs' § 1983 claims, it was not appropriate at this early stage of the proceedings to dismiss them all.

## C.

### Federal Constitutional Claims

Plaintiffs' 42 U.S.C. § 1983 claim alleges that actions taken by Douglas County "in connection with the denial of [plaintiffs' application] wrongly and discriminatorily deprived [plaintiffs] of their rights to beneficial use of their real property, to due process of law and to equal treatment under and protection of federal constitutional and statutory laws protecting and safeguarding such rights."

### 1.

### Due Process

Plaintiffs' 42 U.S.C. § 1983 claim is based, in part, upon denial of due process. We conclude that dismissal of the claim was proper insofar as the claim is based upon procedural due process but was erroneous insofar as the claim is based upon a denial of substantive due process.

### a.

### Procedural Due Process

"In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an opportunity ... granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.1988); *see also Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

When a state affords reasonable remedies to rectify legal errors by local administrative bodies, including avenues of appeal, and when no challenge is raised as to the regulatory or statutory scheme itself, allegations that the local administrative body reached its decision on erroneous reasoning or made demands which exceeded its statutory authority are not sufficient to establish a procedural due process claim. *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.1982); *see also Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988).

Here, plaintiffs were accorded the opportunity for a public hearing on their application, and they could have availed themselves of a C.R.C.P. 106(a)(4) procedure for judicial review of the county commissioners' decision. We conclude that this comports with procedural due process requirements. *See Van Sickle v. Boyes,* 797 P.2d 1267 (Colo. 1990).

Because, as pertinent here, the county procedures, and the state procedures which plaintiffs chose not to utilize, meet all constitutional procedural due process requirements, plaintiffs' due process claim under 42 U.S.C. § 1983 is precluded as a matter of law. *See Brady v. Town of Colchester, supra; Rogin v. Bensalem Township,* 616 F.2d 680 (3d Cir.1980).

### b.

#### Substantive Due Process

Although the principle of substantive due process may apply to land use decisions by local administrative bodies, an aggrieved party must first possess a property interest protected under the federal due process clause. *See Holland v. Board of County Commissioners,* 883 P.2d 500 (Colo.App. 1994). While the right to use one's own real property as one sees fit is a property right fully protected by the due process clause of the federal and state constitutions, this use is subject to the proper exercise of local police powers. *Western Income Properties, Inc. v. City & County of Denver,* 174 Colo. 533, 485 P.2d 120 (1971).

There is no constitutionally protected right to the most profitable, or desirable use of real property. *See Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972); *Madis v. Higginson,* 164 Colo. 320, 434 P.2d 705 (1967).

Consequently, before a deprivation of substantive due process may be claimed, some courts require more than mere ownership interest in the real property and compel the aggrieved party to establish as a threshold matter that it had a protected property interest in the favorable zoning decision sought. *See Biser v. Town of Bel Air,* 991 F.2d 100 (4th Cir.1993); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.1989). If such a protected property interest exists, the decision of the local administrative board will be scrutinized as to whether it was made arbitrarily and capriciously. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111 (10th Cir.1991).

Conversely, under the philosophy that the due process clause was intended to secure the individual from arbitrary exercise of governmental powers, other courts presuppose the existence of a protected property interest arising from the ownership of land and find a substantive due process interest in the freedom from "certain arbitrary, wrongful government actions regardless of the procedures used to implement them." *See Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1220 (6th Cir.1992); *Bello v. Walker, supra.*

Under this approach, decisions by local zoning bodies are evaluated as to whether the decision was "arbitrary or irrational," without considering whether the property owner has alleged any entitlement to a favorable decision. *See Rogin v. Bensalem Township, supra.*

It is an open question in Colorado, whether, in a zoning decision case in which denial of substantive due process is alleged, courts should require a threshold showing of entitlement to a favorable decision or should presuppose a protected property interest arising from the ownership of land and proceed directly to a determination as to whether the challenged governmental action was arbitrary or irrational. However, even under the more demanding standard, if

we give plaintiffs the benefit of every possible favorable inference which may be drawn from their complaint, they have alleged a threshold showing of entitlement to a favorable decision. Therefore, under either test, they state a substantive due process claim.

Certainly, here, plaintiffs have alleged a protected property interest arising from the ownership of land.

■ On the other hand, whether a property owner has a legitimate claim of entitlement to a favorable land use decision by a local zoning board depends upon whether there is either a certainty, or a very strong likelihood, that the application would have been granted absent the conduct alleged to be in violation of substantive due process; if not, the application amounts to a mere unilateral expectation. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985).

■ The claim of entitlement must come from some existing legislative or administrative standard. *Biser v. Town of Bel Air, supra.* If, under that standard, an application properly could have been denied on non-arbitrary grounds, the federal substantive due process claim will be defeated as a matter of law. *See RRI Realty Corp. v. Incorporated Village of Southampton, supra; Yale Auto Parts, Inc. v. Johnson, supra.*

■ The focus of this inquiry is on the degree of discretion afforded to the local zoning body, not on the relative probability of a favorable outcome. *RRI Realty Corp. v. Incorporated Village of Southampton, supra.* If the local zoning body has significant discretion, the fact that the applicant believes the decision was made arbitrarily does not convert his unilateral expectation into an entitlement or right. *Biser v. Town of Bel Air, supra; see also Sylvia Development Corp. v. Calvert County*, 842 F.Supp. 183 (D.Md. 1994). Neither will the fact that an administrative body has historically exercised its discretion in a particular manner mean that it has diminished discretion to act differently in the future. *See Jones v. Lane*, 568 F.Supp. 1113 (N.D.Ill.1983).

Here, plaintiffs' complaint states that the county commissioners applied unusual standards of review to their special use application. They assert that these standards were unrelated to the merits of the application and, instead, were based upon personal considerations unconnected with legitimate governmental objectives. Although it appears that the pertinent zoning regulation vests the county commissioners with discretion in considering whether to grant an application for use by special review, plaintiffs' complaint alleges that, but for a refusal to follow an existing administrative standard, the application would have been granted.

■ Motions to dismiss for failure to state a claim are not viewed with favor and are granted only rarely. *Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972). Here, considering, as we must, only the allegations in the complaint, and assuming that the material allegations are true, we conclude that the claim alleges both an entitlement to a favorable outcome and an arbitrary and irrational governmental action relative to plaintiffs' application. *See Colorado National Bank v. F.E. Biegert Co.*, 165 Colo. 78, 438 P.2d 506 (1968); *Dillinger v. North Sterling Irrigation District*, 135 Colo. 100, 308 P.2d 608 (1957).

In returning plaintiffs' substantive due process claim to the trial court, however, we do not express any opinion as to the eventual outcome of this issue; our task is limited to determining whether plaintiffs' complaint states a claim for relief, regardless of how remote or unlikely it appears that they ultimately will prevail. *See Rogin v. Bensalem Township, supra; Davidson v. Dill, supra.*

■ Also, for purposes of guidance on remand, we emphasize that "the arbitrary, capricious, or irrational" standard of review appropriate to plaintiffs' substantive due process claim is substantially different from the standard of review under C.R.C.P. 106, even though it employs similar terms. *See Pearson v. City of Grand Blanc, supra* (the meaning of "arbitrary and capricious" in federal substantive due process context is far different than in the context of state administrative law).

■ The precise application of this "arbitrary, capricious, or irrational" standard of

review varies among the federal courts. *See Pearson v. City of Grand Blanc, supra.* However, most jurisdictions agree that, if the zoning decision at issue may be characterized as quasi-judicial, the governmental action will not be found to be arbitrary, capricious, or irrational unless no articulated basis for the decision bears any rational relationship to a legitimate governmental interest. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, supra; Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461 (7th Cir. 1988).

Because in Colorado the denial of a special use permit is a quasi-judicial action, this application of the standard is appropriate here. *Cf. Colorado State Board of Land Commissioners v. Colorado Mined Land Reclamation Board,* 809 P.2d 974 (Colo. 1991).

### 2.
### *Equal Protection*

Under the same restricted review, plaintiffs' claim of denial of equal protection of the law, however, is insufficient to survive a motion to dismiss under C.R.C.P. 12(b)(5).

■ If, as here, no statutory classification is created by the zoning regulation on its face, in order to state a claim for denial of equal protection an aggrieved party must allege that the governmental actions possess an element of intentional or purposeful discrimination that is based on classifications such as sex and race, or on an egregious abuse of power. *Sylvia Development Corp. v. Calvert County, supra; see Trafford v. Penno,* 800 F.Supp. 1052 (D.R.I.1992).

■ Plaintiffs do not allege any class-based discrimination. The complaint merely alleges that after the Board used "unusual standards" to review plaintiffs' application, "the board approved like or similar applications of other landowners." Specifically, plaintiffs allege that their application was denied based upon considerations unrelated to the merits of their application. Further, they allege that certain of the county commissioners should have abstained from the application procedure.

■ Departures from administrative procedures or policies, use of illegitimate criteria, and amorphous allegations of bias, bad faith, malice, conspiracy, and corruption do not amount ordinarily to a cognizable equal protection claim; a plaintiff must allege actions akin to actual corruption or a bad faith intent to injure based upon personal hostility. *See Trafford v. Penno, supra; Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256 (1st Cir.1976). This prevents disgruntled permit applicants from creating constitutional claims "merely by alleging that they were treated differently from a similarly situated applicant" and subjecting "virtually any state permit denial" to § 1983 litigation. *See Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 44–45 (1st Cir.1992).

■ Dismissal for failure to state a claim will be affirmed if it appears that a plaintiff cannot establish any set of facts in support of his or her claim that would permit a court to grant relief. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, supra; Davidson v. Dill, supra.* Because, absent allegations of actual corruption or bad faith intent to injure, even if plaintiffs were subjected to selective treatment in the denial of their special use application, we conclude that the facts as alleged by plaintiffs do not state a claim which would entitle them to relief. *See Trafford v. Penno, supra.*

### 3.
### *Taking Claim*

In their briefs on appeal, plaintiffs do not profess that this is a regulatory taking claim. Their complaint, however, asserts that they have been deprived of the beneficial use of their real property. To the extent that this assertion could be construed as describing a taking without just compensation, plaintiffs' complaint fails to state a claim.

■ Land use regulations as applied to a particular piece of property will constitute a taking if they prevent any economically reasonable use of the property. *See Van Sickle v. Boyes, supra; Landmark Land Co. v. City & County of Denver,* 728 P.2d 1281 (Colo.1986). Here, however, plaintiffs' complaint does not allege that government action

has resulted in a permanent occupation of their property or the loss of all economically beneficial or productive use. Therefore, no taking has occurred. *See City of Northglenn v. Grynberg,* 846 P.2d 175 (Colo.1993).

 Furthermore, even if the prohibition of a commercial horse training and boarding business divested the property of its only economically viable use, a taking claim would not be ripe. Plaintiffs have not pursued any state inverse condemnation claim and thus have not established that the state intends to deny them just compensation. *See Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506 (1st Cir.1987) (whether based upon the Fifth Amendment, or upon substantive due process, damages under 42 U.S.C. § 1983 for the diminution of value of property by government action may not be determined until just compensation has been either awarded or denied).

### D.

#### State Constitutional Claims

Although not clearly articulated in the complaint, or in their briefs, plaintiffs argue on appeal that their second claim for relief for violations of state statutory and constitutional law also was brought pursuant to 42 U.S.C. § 1983. As such, they assert, it was also improperly dismissed. We disagree.

 A plaintiff does not state a claim for relief under 42 U.S.C. § 1983 by alleging that the conduct of the defendants violated state constitutional or statutory law. *Handley v. City of Seagoville,* 798 F.Supp. 1267 (N.D.Tex.1992); *Schieb v. Humane Society of Huron Valley,* 582 F.Supp. 717 (E.D.Mich. 1984); *see also Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

 Moreover, to the extent that plaintiffs' second claim for relief may fairly be read as an independent claim for relief for violations of state constitutional and statutory law, it should have been brought as a

C.R.C.P. 106(a)(4) action within thirty days of the county commissioners' zoning decision. Therefore, this claim was properly dismissed.

 The denial of a special use permit is a quasi-judicial action. *See Colorado State Board of Land Commissioners v. Colorado Mined Land Reclamation Board, supra.* A C.R.C.P. 106(a)(4) action represents the sole remedy for review of a quasi-judicial action. *See Norby v. City of Boulder,* 195 Colo. 231, 577 P.2d 277 (1978). When a party has been afforded notice and a chance to participate in a public hearing, any challenge to a local zoning body's quasi-judicial action, whether constitutional or statutory, must be joined with the C.R.C.P. 106 action and brought within the time limits prescribed by that rule. *Snyder v. City of Lakewood, supra.*

 This limitation does not apply to facial challenges to the zoning legislation itself. *See Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670 (Colo. 1982). Plaintiffs, however, raise no facial challenge to the zoning regulation at issue.

### II.

#### Conspiracy Claim

Plaintiffs next argue that the trial court erred in determining that 42 U.S.C. § 1985(3) (1988) does not provide relief for an alleged politically motivated conspiracy. Even if the trial court erred in so finding, however, we affirm the dismissal of plaintiffs' third claim for relief because, upon review of plaintiffs' complaint, we can discern no alleged motivation for the asserted conspiracy, political or otherwise.

In order to prevent the transformation of 42 U.S.C. § 1985 into a source of general federal tort law, the federal courts have consistently insisted that it is necessary to allege an invidiously discriminatory, class-based animus. *See Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) *Brown v. Reardon,* 770 F.2d 896 (10th Cir. 1985).

 In *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Court cast some doubt upon whether a

purely politically motivated class-based animus is sufficient under 42 U.S.C. § 1985(3). The question, however, was left undetermined. Even if we assume, without deciding, that a properly pled political conspiracy may provide the basis for an action pursuant to 42 U.S.C. § 1985(3), *see Conklin v. Lovely,* 834 F.2d 543 (6th Cir.1987) (support of a political candidate); *Keating v. Carey,* 706 F.2d 377 (2d Cir.1983) (membership in a political party); *Means v. Wilson,* 522 F.2d 833 (8th Cir.1975) (membership in, and activities on behalf of, a political movement), and although the protection of 42 U.S.C. § 1985(3) may reach clearly defined politically based classes, *see Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir.1975); *Cameron v. Brock,* 473 F.2d 608 (6th Cir.1973), a plaintiff must, nonetheless, first allege that he or she is a member of such a class. *See Perez v. Cucci,* 725 F.Supp. 209 (D.N.J.1989).

 Notwithstanding certain statements made by the trial court here, our careful review of plaintiffs' complaint reveals that they do not allege either an identifiable politically-based animus on the part of the county commissioners or the Rudds, or membership in any class. Hence, because it does not contain either an allegation of class-based animus or a description of a sufficiently definite or precise class of persons to invoke a claim under 42 U.S.C. § 1985(3), the third claim was properly dismissed. *See Wilhelm v. Continental Title Co.,* 720 F.2d 1173 (10th Cir.1983).

## III.

### Claim for Invasion of Privacy

Plaintiffs next argue that the trial court erred in granting defendants' motions for summary judgment on their fourth claim for invasion of privacy resulting from the alleged illegal investigation of their zoning violations by the Board. Specifically, they claim that the Board's decision to have a private investigator surview their property intruded on their "right to be left alone." We disagree because, as a matter of law, no privacy rights of plaintiffs were infringed by the investigator's activities.

### A.

 Before an aggrieved party may object to a search by government agents, he or she must first demonstrate a legitimate expectation of privacy in the areas searched. *People v. Oates,* 698 P.2d 811 (Colo.1985); *see also Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A party who cannot demonstrate such a legitimate expectation of privacy by virtue of some possessory or proprietary interest in the areas searched may lack standing to contest the search. *People v. Fox,* 862 P.2d 1000 (Colo. App.1993); *see also People v. Towers,* 176 Colo. 295, 490 P.2d 302 (1971).

 Absent some agreement to the contrary, a tenant is entitled to the possession of the leased premises to the exclusion of the landlord. *Radinsky v. Weaver,* 170 Colo. 169, 460 P.2d 218 (1969); *Rutherford v. Scarborough,* 28 Colo.App. 352, 472 P.2d 721 (1970). When a search takes place on leased premises, it is the lessee's rights of privacy which are infringed, not those of the landlord. *See Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *cf. Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (search of hotel room violates guest's right of privacy, not hotel owner's; therefore, hotel management had no authority to consent to search); *United States v. Storage Spaces Designated Nos. 8 & 49,* 777 F.2d 1363 (9th Cir.1985) (concluding that lessee of storage locker and not lessor would have authority to consent to search); *People v. Breidenbach,* 875 P.2d 879 (Colo.1994) (mere ownership of real property does not confer the authority to consent to search of that property).

 The undisputed evidence presented by defendants in conjunction with their motions for summary judgment indicates that, at the time of the investigator's activities, plaintiffs had leased the property to Jay-Brooke and that JayBrooke was the only entity conducting horse training and boarding on the property. Therefore, the privacy interest alleged to have been invaded by any alleged illegal search belonged to JayBrooke as plaintiffs' lessee, and not to plaintiffs.

Even if we consider plaintiffs' assertion, made for the first time at oral argument, that they did not lease their entire property to JayBrooke, it remains undisputed that the areas shown to the investigator when he visited the property were only those areas in which JayBrooke was conducting its operation.

**B.**

Further, no privacy interest of plaintiffs' was violated because the challenged activities did not constitute a search.

It is undisputed that some of the investigator's observations were made from a public road outside plaintiffs' property. Because there is no invasion of privacy involved in observing that which is plainly visible to the public, a person's real property is not protected from observations lawfully made from outside its perimeter. *Hoffman v. People*, 780 P.2d 471 (Colo.1989).

Neither are we persuaded that the use of a camera with a telescopic lens transforms this lawful observation into an unreasonable search. *See United States v. Rucinski*, 658 F.2d 741 (10th Cir.1981); *cf. United States v. Bassford*, 601 F.Supp. 1324 (D.Me. 1985), *aff'd*, 812 F.2d 16 (1st Cir.1987) (use of binoculars to enhance view of readily visible marijuana plants did not constitute unreasonable search); *State v. Rogers*, 100 N.M. 517, 673 P.2d 142 (N.M.App.1983) (use of binoculars does not render aerial surveillance unconstitutionally intrusive).

The remainder of the investigative activities to which plaintiffs object took place when the investigator was invited onto the property by one of the JayBrooke owners. The evidence was undisputed that, posing as a horse owner interested in boarding and training, the investigator contacted JayBrooke from its advertisement in the telephone book and was invited to view the operation by Jennifer Brooke.

Business premises are protected from unreasonable searches but they are open to intrusions that would not be permissible in purely private circumstances. *G.M. Leasing Corp. v. United States*, 429 U.S. 338,

97 S.Ct. 619, 50 L.Ed.2d 530 (1977). A commercial establishment enjoys a diminished expectation of privacy in those areas which are open to the public. *People v. Rowe*, 837 P.2d 260 (Colo.App.1992), *rev'd on other grounds*, 856 P.2d 486 (Colo.1993). Thus, when an intrusion into a commercial establishment is based upon the nature of the business activities there taking place, or upon the regulation thereof, the business owner may not have a reasonable expectation of privacy in those activities. *See G.M. Leasing Corp. v. United States, supra.*

Furthermore, according to the undisputed evidence, although the investigator was posing as a potential customer, he was invited onto the property. When an agent of the government, posing as a willing participant in unlawful activity, is allowed entry by invitation, there has been no unreasonable search. *People v. Nisser*, 189 Colo. 471, 542 P.2d 84 (1975).

Although plaintiffs protest that the investigator did not view the property on the date designated by Jennifer Brooke, it is undisputed that he was consensually admitted onto the property by the co-owner of JayBrooke. *See People v. Rowe, supra; People v. Lucero*, 720 P.2d 604 (Colo.App.1985).

We also note that the Rudds, apart from their expression of opposition to a commercial horse operation, did not participate in any of the investigator's challenged activities, and the record indicates that plaintiffs did not dispute this or the fact that Dorothy and Robert Rudd observed and took photographs of plaintiffs' property only from a vantage point outside the property itself.

Finally, contrary to plaintiffs' contention, § 30–28–124, C.R.S. (1986 Repl.Vol. 12A), which sets forth penalties for zoning violations, does not, by its plain terms, preclude investigation of alleged zoning violations by the Board. Thus, also contrary to plaintiffs' contention, the Board did nothing illegal, in that regard, by its investigation.

To the extent that plaintiffs assert that, by "selective enforcement" of the zoning laws, the county defendants singled plaintiffs out for investigation, we simply note that

there is no privacy interest in violating the law.

Therefore, the trial court did not err in granting both Douglas County's, and the Rudds', motions for summary judgment on plaintiffs' fourth claim for relief.

## IV.

### *Alleged Violation of C.R.C.P. 56(f)*

Finally, plaintiffs contend that the trial court erred by failing to grant their C.R.C.P. 56(f) motion in order to conduct discovery as to their invasion of privacy claim. We perceive no abuse of discretion.

After the trial court dismissed plaintiffs' first, second, and third claims for relief, the county defendants successfully moved for a suspension of discovery pending a determination of the applicability of governmental immunity to plaintiffs' remaining claim for invasion of privacy. Thereafter, all defendants moved for summary judgment as to that claim.

Plaintiffs responded by requesting the court to reconsider and, pursuant to C.R.C.P. 56(f), to permit discovery sufficient to allow plaintiffs to prepare affidavits in opposition of the motion for summary judgment. The affidavits of plaintiff JoAnn Scoggin Sundheim, of Jennifer Brooke, and of plaintiffs' attorney were attached in support of this motion.

In order to avoid the precipitous and premature grant of judgment against the opposing party, C.R.C.P. 56(f) affords an extension of time to utilize discovery procedures to seek additional evidence before the trial court rules on a motion for summary judgment. *DuBois v. Myers*, 684 P.2d 940 (Colo.App.1984). A reasonable continuance for discovery purposes may be ordered if it appears that summary judgment would be premature absent the opportunity to conduct this discovery. *See Holland v. Board of County Commissioners, supra.*

Our review of the affidavits submitted by plaintiffs reveal that any discovery related to these allegations could not have resulted in any facts that would preclude summary judgment. Regardless of prior ac-tivities of the defendants regarding the investigation, the undisputed material facts demonstrate no privacy interest and no illegal search.

Therefore, we conclude that, regardless whether the trial court properly suspended discovery as to the county defendants, plaintiffs have not demonstrated that discovery was necessary to oppose the motion for summary judgment. *See Nestor Colon Medina & Sucesores, Inc. v. Custodio, supra* (construing the substantially similar Fed.R.Civ.P. 56(f)).

## V.

Upon dismissal of plaintiffs' claims, Douglas County submitted a motion for an award of attorney fees. On cross-appeal, Douglas County contends that the trial court abused its discretion by denying this motion. We agree in part.

Douglas County argues that as to plaintiffs' 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims, attorney fees should have been awarded as costs. The trial court should reconsider this issue.

According to 42 U.S.C. § 1988 (1988):

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

A prevailing plaintiff is one who has successfully litigated a significant issue which achieves some of the benefit sought by the party. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A defendant, in contrast, is considered to be a prevailing party for purposes of an award of attorney fees if the plaintiff's claim is found to be groundless or without foundation. *See Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

Here, although plaintiffs' first claim for relief has been reinstated in part, plaintiffs' second claim for relief was properly dismissed, as was their 42 U.S.C. § 1985 claim. Accordingly, applying the appropriate

standard on remand, the trial court should re-examine Douglas County's request.

Further, we agree with Douglas County that, insofar as plaintiffs' complaint alleged willful and wanton conduct and asked for exemplary damages from the county defendants pursuant to the invasion of privacy claim, the trial court must award attorney fees under § 24–10–110(5), C.R.S. (1987 Repl.Vol. 10A).

We do not agree, however, that the trial court should have awarded attorney fees pursuant to § 13–17–201, C.R.S. (1987 Repl. Vol. 6A). According to *First Interstate Bank v. Berenbaum*, 872 P.2d 1297 (Colo.App. 1993), no attorney fees award may be granted under § 13–17–201 unless an entire tort action has been dismissed. Here, one of plaintiffs' four claims has been restored in part. Therefore, § 13–17–201 is not presently available as a basis for an award of attorney fees. *See Holland v. Board of County Commissioners, supra.*

Finally, we do not agree that plaintiffs' claims were frivolous and groundless pursuant to § 13–17–102, C.R.S. (1987 Repl. Vol. 6A). Although plaintiffs' second and third claims for relief did not survive a motion to dismiss under C.R.C.P. 12(b)(5), and plaintiffs' fourth claim was decided against them on motion for summary judgment, we are precluded under the appropriate standard of review from concluding that, based upon the facts as alleged in the complaint, plaintiffs knew or should have known that these claims were substantially frivolous or substantially groundless relative to the actions of Douglas County. *See Cohen v. Empire Casualty Co.*, 771 P.2d 29 (Colo.App. 1989).

The judgment as to plaintiffs' second, third, and fourth claims is affirmed. The dismissal of plaintiffs' first claim for relief is reversed, as is the order denying Douglas County an award of attorney fees. Because only the third and fourth claims are applicable to the Rudds, the trial court is directed to dismiss the complaint as against these defen-

dants. The cause is remanded for further proceedings consistent with this opinion.

STERNBERG, C.J., and KAPELKE, J., concur.